# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant EDWARD T. MCTEAR**
**United States Army, Appellant**

ARMY 20220531

Headquarters, Fort Stewart
Albert G. Courie III and Trevor I. Barna, Military Judges
Colonel Joseph M. Fairfield, Staff Judge Advocate

For Appellant: Colonel Phillip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Captain Amber L. Bunch, JA (on brief).

For Appellee: Major Patrick S. Barr, JA; Major Chase C. Cleveland, JA; Major Kathryn M. Moryl, JA (on brief).

13 November 2024

---
SUMMARY DISPOSITION ON RECONSIDERATION
---

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOPER, Judge:

A military judge sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of sexual assault and two specifications of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2019) [UCMJ]. The military judge conditionally dismissed the abusive sexual contact specifications, pending appellate review, and sentenced appellant to a dishonorable discharge, 24 months of confinement, reduction to the grade of E-1, and total forfeitures.

Appellant raised three assignments of error, as well as matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). On 23 September 2024, we affirmed the findings and sentence. *United States v. McTear*, ARMY 20220531, 2024 CCA LEXIS 392 (Army Ct. Crim. App. 23 Sep. 2024) (mem. op.).

On 22 October 2024, appellant moved for reconsideration on the grounds that the government charged appellant under one Article 120 theory of criminal liability and proved a different theory of liability at trial, citing *United States v. Mendoza*, a recent decision by our superior court. __ M.J. __, 2024 CAAF LEXIS 590 (C.A.A.F. 7 Oct. 2024). Specifically, appellant was charged under Article 120(b)(2)(A), sexual assault without consent, and appellant alleges the government's theory at trial was under Article 120(b)(2)(B), sexual assault where the victim was asleep.[1] We granted the motion and, after reconsideration in light of *Mendoza*, reaffirm.

## BACKGROUND

In the fall of 2020, appellant met the victim in the stairway of the apartment complex where they both lived. They developed a friendship and began hanging out a couple of times a month. On 9 January 2021, appellant invited the victim to a housewarming party at his new apartment. The victim arrived at 2200 hours and she had a couple of shots, two to three mixed drinks, a beer, and smoked marijuana. Feeling "super drunk," the victim began to get tired and sick. She vomited in the kitchen sink, and friends at the party moved her to the bathroom. She vomited again in the bathroom and appellant lifted her up from the floor and carried her into the guest bedroom. He left her in the bedroom with a glass of water and a trash can in case she threw up again.

The victim fell asleep and the next thing she remembered was appellant getting into the bed with her. She told him to go to a different bed. The victim woke up again to appellant touching her back and her buttocks, she swatted him away and told him to stop. The victim testified this happened a couple of times, where she woke up to him touching her, didn't like it, and told him to stop. The next thing the victim remembered was feeling (1) her pants unbuttoned and unzipped, (2) wetness in her vagina and buttocks, and (3) appellant's penis leaving her vagina. She pushed him away and ran into the bathroom, cleaned herself up, and called a friend for assistance. Shortly thereafter, she was examined by a Sexual Assault Nurse Examiner at a rape crisis center.

---

[1] We note appellant's initial brief on this error focused on this case being at "the crossroads of Article 120(b)(2)(A) and Article 120(b)(2)(B)" and argued that "sleep . . . was the focal point of the Government's case." On request for reconsideration, citing *Mendoza*, appellant argues for the first time that the Government charged "without consent . . . but then proved its case through the use of [the victim's] level of intoxication" and that penetration occurred before the victim manifested any expression regarding lack of consent." This new argument is unsupported by the record and our grant of reconsideration is based on appellant's initial brief.

## LAW AND DISCUSSION

In *Mendoza*, the Court of Appeals for the Armed Forces (CAAF) set aside the decision of this court affirming appellant's conviction on the grounds that appellant had been convicted of sexual assault while the victim was incapable of consenting under Article 120(b)(3)(A), UCMJ, despite being charged with sexual assault without consent under Article 120(b)(2)(A), UCMJ. *Id.* at *22-23. The conflation of "two different and inconsistent theories of criminal liability" "rob[bed] the defendant of his constitutional 'right to know what offense and under what legal theory he [would] be tried and convicted" and therefore, violated appellant's due process rights. *Id.* at *3, 18 (citing *United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016)).

The CAAF held that a sexual assault under Article 120(b)(2)(A), UCMJ, "criminalizes the performance of a sexual act upon a victim who is capable of consenting but does not consent" whereas a sexual assault under Article 120(b)(3)(A), UCMJ, "criminalizes the performance of a sexual act upon a victim who is incapable of consenting to the sexual act." *Id.* at *17-18. Despite the statutory distinction between the diverging theories of liability, however, the CAAF acknowledged that "offering evidence of an alleged victim's intoxication" could be used "to prove the absence of consent." *Id.* at *22.

We find no *Mendoza* problems in appellant's case, as we have clear verbal and physical manifestations of lack of consent consistent with the charged theory of criminal liability.

The record is replete with evidence indicating the victim's lack of consent. For instance, the victim testified that she woke up multiple times while in the bed and: (1) told appellant to go to a different bed after he crawled into the one she was lying in; (2) swatted appellant's hand away and told him to stop touching her; and (3) specifically told appellant "stop touching me" when he began touching her butt. The victim testified "that happened, like, a couple times where I woke up to him touching me, and I didn't like it. And I was like, 'Hey, I just feel kind of weird that you're touching me right now. And I asked you to stop, so can you stop? Like, I'm drunk. I can't really . . .'" She testified to 'swatting him a couple times" and saying, "Stop touching me. I'm drunk. I don't want to do anything." Finally, the victim testified she pushed appellant away and ran into the bathroom after waking up to his penis being pulled from her vagina.

In *Mendoza,* "the Government presented significant evidence of ███'s extreme intoxication and argued that ███'s inability to consent established the absence of consent." *Id.* at *3. The victim in that case drank to the point of blacking out; she remembered drinking with soldiers outside the barracks and then nothing until she woke up the next morning to appellant knocking on her door. *Id.* at *4. The CAAF

found the government relied heavily on █ 's inability to consent due to intoxication, to prove the lack of consent. *Id.* at \*19.

However, in this case, the evidence clearly proved the victim, through words and conduct, expressed her lack of consent to appellant before the sexual assault. While the victim may have been in and out of sleep at the time of the offense, the victim's clear manifestations of her lack of consent provide overwhelming evidence that she did not consent to the sexual act.[2]  Appellant was charged with a lack of consent offense, under Article 120(b)(2)(A), UCMJ, and the evidence at trial was legally and factually sufficient. We have no concern that the military judge possibly convicted appellant under an uncharged theory of liability. *Compare with id.* at \*17 (noting "[t]he military judge may have convicted Appellant of sexual assault on the theory that █ was incapable of consenting without the Government proving that Appellant knew or should have known that she was incapable. We agree with Appellant that this possibility raises serious due process concerns.").

## CONCLUSION

On consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Senior Judge FLEMING and Judge PENLAND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[2] "All the surrounding circumstances are to be considered in determining whether a person gave consent." UCMJ, art. 120(g)(7)(C).